UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Cafferky,
        Plaintiff,

        v.                                   Civil Action No. 1:09-CV-193

Andrew Pallito,
        Defendant.

## REPORT AND RECOMMENDATION
(Docs. 9, 11 and 16)

Plaintiff Christopher Cafferky, a Vermont inmate proceeding *pro se*, claims that he is in need of legal assistance and that the legal resources in prison are inadequate. Defendant Andrew Pallito, Commissioner of the Vermont Department of Corrections, now moves to dismiss the complaint on several grounds, including: official capacity immunity; lack of personal involvement; failure to state a constitutional violation; and mootness. (Doc. 9.) Also before the Court are Cafferky's motion for injunctive relief in which he seeks release from state custody, and his motion for the Court to delay consideration of Pallito's motion to dismiss. (Docs. 11 and 16.)

For the reasons set forth below, the motion to delay consideration of the motion to dismiss is DENIED. Having reviewed the parties' submissions with respect to the motion to dismiss, I recommend that the motion to dismiss be GRANTED, and that Cafferky be allowed 30 days in which to file an amended complaint. I further recommend that Cafferky's motion for release from state custody be DENIED.

## Factual Background

When Cafferky filed his complaint in August 2009, he was incarcerated at the Northeast Regional Correctional Facility ("NERCF") in St. Johnsbury, Vermont. His single-paragraph statement of claim alleges that the NERCF law library was not staffed properly, was rarely open, and was "obsolete." For relief, the complaint seeks "immediate legal assistance to help me prepare this very complicated lawsuit which entails numerous issue[s] needing prof[]essional coun[s]el." (Doc. 5 at 2.) The complaint does not give any further information about either the nature of the proposed lawsuit, or Cafferky's efforts to pursue his claim(s).

Pending before the Court is Commissioner Pallito's motion to dismiss. (Doc. 9.) Pallito first argues that he is immune from suit in his official capacity with respect to any claims for damages. He next argues that there is no allegation of his personal involvement. Third, Pallito contends that Cafferky has failed to set forth a valid claim of inadequate access to the courts because (1) he does not allege any injury and (2) he was represented by counsel in his criminal case. Pallito's final argument is that Cafferky's claim is moot because, at the time the motion to dismiss was filed, Cafferky was no longer being housed at NERCF.

Shortly after the Court received the motion to dismiss, Cafferky notified the Clerk's Office that he had been re-incarcerated at NERCF, that his re-incarceration was unlawful, and that he would like the Court to enter an injunction releasing him from prison. (Doc. 11.) Cafferky has also moved the Court to delay its consideration of the motion to dismiss "based on the grounds that the necessary facts that are required to

oppose summary judgement [sic] are not possible to attain at this time." (Doc. 16 at 1.) Cafferky's most recent filing is an affidavit in which he alleges that he was threatened with harassment by the local Sheriff's Department. (Doc. 18.)

## Discussion

**I.      Motion to Delay Consideration of Motion to Dismiss**

The Court will first address Cafferky's motion to delay consideration of the pending motion to dismiss. Cafferky states that he is in the process of gathering information to support his complaint, and that some of this information is germane to arguments raised in the motion to dismiss. Specifically, he contends that his access to the courts was impaired by the ineffectiveness of counsel at his criminal trial, and that certain exhibits will demonstrate counsel's shortcomings. Also, in response to the defendant's claim that the complaint does not allege any injury, Cafferky submits that he will be able to document the poor living conditions at NERCF.

Each of Cafferky's arguments is misplaced. With regard to the question of counsel's performance at the criminal trial, ineffective assistance of trial counsel is not one of the claims in the complaint. The complaint cites only Cafferky's efforts to bring a "lawsuit," and says nothing about a criminal proceeding. Furthermore, an ineffective assistance of counsel claim would need to be brought in a state court proceeding before it could be presented in federal court. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986). Cafferky's other argument, that he can show injuries resulting from his incarceration, does not address the question of whether he suffered an injury (*e.g.*, the inability to pursue a legal claim) arising out of his allegedly-inadequate access to the courts. *See*

*Lewis v. Casey*, 518 U.S. 343, 351 (1996). Because Cafferky's arguments do not pertain to the allegations set forth in the complaint, they carry no weight with respect to the merits of the motion to dismiss. The motion to delay consideration of the motion to dismiss is therefore DENIED.

## II. Motion to Dismiss Standard

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right of relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III. Official Capacity Immunity

Pallito's first argument is that, to the extent money damages are being sought, the Eleventh Amendment bars such relief when a state official is being sued in his official capacity. It is not clear from the complaint that Cafferky is seeking money damages. Nonetheless, in the event that damages are sought, any official capacity claim is barred.

The Eleventh Amendment prohibits suits for damages brought in federal court against unconsenting states or state officials sued in their official capacities. *See*

*Edelman v. Jordan*, 415 U.S. 651, 663 (1974). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Congress has not abrogated Vermont's sovereign immunity from a § 1983 suit in federal court, and the State of Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment. *See, e.g.*, 12 V.S.A. § 5601(g). Therefore, any federal constitutional claims for damages brought against Commissioner Pallito in his official capacity should be DISMISSED.

## IV.  Personal Involvement

Pallito next argues that the complaint fails to allege his personal involvement in unconstitutional conduct. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In fact, the Complaint's only mention of Pallito is in the case caption.

Cafferky claims generally that his access to legal materials and legal assistance has been inadequate. Specifically, he claims that the law library at NERCF is often closed, inadequately staffed, and obsolete, and – reading the complaint liberally -- that the deprivation of adequate legal materials is unconstitutional. Although he does not claim

that Commissioner Pallito was aware of or directly involved in this alleged deprivation, he may be claiming that as Commissioner, Pallito can be held liable as a supervisor.

"[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al- Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Furthermore, mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

Nonetheless, under certain limited circumstances, a supervisor may be held liable for unconstitutional conduct. The Second Circuit has held that

> [s]upervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983

6

suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Here, insofar as Cafferky is alleging supervisor liability, his complaint as currently drafted is deficient. He does not claim that Pallito was either directly involved in, or even aware of, his claims. Nor does he allege that Pallito helped create a policy or custom that sanctioned the allegedly-wrongful library conditions. There is no claim of grossly negligent supervision, and again, no suggestion that Pallito was aware of any problems such that he could now be liable for failing to take appropriate corrective action. I therefore recommend that the Court GRANT Pallito's motion to dismiss on the basis of a failure to claim sufficient personal involvement.

## V. Access to Courts Claim

Pallito also argues that dismissal is warranted on Cafferky's claim that the alleged library conditions were unconstitutional. The U.S. Supreme Court has held that the First Amendment grants prisoners "a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *Bourdon*, 386 F.3d at 92. However, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351-54. Furthermore, a plaintiff must show that the defendant

7

took or was responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).

Cafferky's claim is that the legal resources at NERCF are inadequate. The complaint does not allege any *actual* interference with his access to the courts. Nor does he allege an actual injury. *See id.*; *Lewis*, 518 U.S. at 351-53. Furthermore, with respect to the injury requirement, the Supreme Court has held that it "is not satisfied by just any type of frustrated legal claim," *Id.* at 354. In *Lewis*, the Court held that the right of access to courts does not

> guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355.

Here, Cafferky alleges only that he is trying to bring a "very complicated lawsuit which entails numerous issues . . . ." (Doc. 5 at 3.) Without more, his claim falls short of alleging a valid cause of action, and the motion to dismiss should be GRANTED.[1]

---

[1] Because I am recommending dismissal on the grounds discussed above, I find that the Court need not address the defendant's mootness argument. Briefly stated, the defendant contends that any claims for injunctive relief with respect to the prison library at NERCF were rendered moot when Cafferky was released from prison on August 29, 2009. This argument was called into question when Cafferky informed the Court in January 2010 that he had been re-incarcerated. (Doc. 11.) Cafferky also argued in opposition to the motion to dismiss that the question of court access was not moot since, even while on furlough, his movements were restricted by the DOC. (Doc. 16 at 4.)

## VI. Leave To Amend

The Second Circuit instructs that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading . . . gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). As discussed above, Cafferky's sparse complaint does not connect Commissioner Pallito to the alleged wrongdoing. Nor does his access to courts claim satisfy established pleading requirements. It is nonetheless conceivable that he was denied access to the courts, and that he has evidence to show Commissioner Pallito's involvement in the library situation. Indeed, the existence of such evidence is suggested in Cafferky's motion to delay consideration of the motion to dismiss. (Doc. 16 at 3.) Therefore, while I am recommending that the motion to dismiss be granted, I also recommend that Cafferky be allowed 30 days in which to file an amended complaint. The Court should further order that a failure to comply with the 30-day deadline will result in the dismissal of the complaint with prejudice.

## VII. Motion for Injunctive Relief

The final motion before the Court is Cafferky's request for an injunction. The motion, filed approximately five months after the complaint, contends that the revocation of his furlough was unconstitutional. For relief, Cafferky seeks an order enjoining the Department of Corrections from "having any control over" him and requiring his immediate release from prison. (Doc. 11.)

A preliminary injunction is an extraordinary remedy that should not be granted as a routine matter. *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). In most cases, to

warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (quotation omitted). Courts have also held that a motion for preliminary injunctive relief must relate to the allegations contained in the underlying complaint. *See, e.g., McAllistor v. Goord*, 2009 WL 5216953, at *2 (N.D.N.Y. Dec. 30, 2009); *McKinnon v. Tresman*, 2004 WL 78091, at *1 (D. Conn. Jan. 9, 2004).

In this case, Cafferky's underlying complaint alleges inadequate legal resources. His motion for injunctive relief claims wrongful furlough revocation. If the Court accepts the proposition that a motion for injunctive relief must relate to the harm alleged in the complaint, the motion should be DENIED.

Furthermore, Cafferky offers no factual or legal support for his claim that his furlough was wrongfully revoked. To the extent that he seeks immediate relief from confinement, he must first exhaust his state court remedies before coming to federal court. 28 U.S.C. § 2254(b)(1)(A). He has therefore failed to demonstrate either a likelihood of success or sufficiently serious questions with respect to the merits of his furlough claim, and his motion for injunctive relief should be DENIED.

## Conclusion

For the reasons set forth above, Cafferky's motion to delay consideration of Pallito's motion to dismiss (Doc. 16) is DENIED. I recommend that the motion to

dismiss (Doc. 9) be GRANTED, and that Cafferky be allowed 30 days in which to amend his complaint as set forth above. Failure to file an amended complaint in a timely manner should result in dismissal of the case with prejudice. I further recommend that Cafferky's motion for an injunction (Doc. 11) be DENIED.

Dated at Burlington, in the District of Vermont, this 30th day of June, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).