UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Cafferky,

      Plaintiff,

     v.                                                                   Civil Action No. 1:09-CV-193

Andrew Pallito, Celeste Girrell,
Scott Shafer, Carol Callea,
Robert Bowen, and Dennis Brancaccio,

      Defendants.

## REPORT AND RECOMMENDATION
(Doc. 22)

Plaintiff Christopher Cafferky, a Vermont inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983.  Cafferky's Amended Complaint alleges that his parole was wrongfully revoked, that he was subsequently denied access to alcohol rehabilitation, and that the legal resources in the prison library were inadequate.  Defendants now move to dismiss on several grounds, including: official capacity immunity; lack of personal involvement; failure to state a constitutional violation; and mootness.  (Doc. 22.)  For the reasons set forth below, I recommend that the motion to dismiss be GRANTED.

**Factual and Procedural Background**

When Cafferky commenced this case in August 2009, he was incarcerated at the Northeast Regional Correctional Facility ("NERCF") in St. Johnsbury, Vermont.  His initial Complaint included a single-paragraph statement of claim, alleging that the NERCF law library was not staffed properly, was rarely open, and was "obsolete."  For relief, the Complaint sought "immediate legal assistance to help me prepare this very complicated

lawsuit which entails numerous issue[s] needing prof[]essional coun[s]el." (Doc. 5 at 2.) The sole Defendant in the Complaint was the Commissioner of the Vermont Department of Corrections, Andrew Pallito.

The Commissioner moved to dismiss, setting forth essentially the same arguments presented here: official capacity immunity; lack of personal involvement; failure to state a constitutional violation; and mootness. I subsequently issued a Report and Recommendation, recommending that the Court grant the motion to dismiss with leave to amend. The Report and Recommendation concluded that while Cafferky had failed to allege the Commissioner's personal involvement, "it is conceivable that [Cafferky] was denied access to the courts, and that he has evidence to show Commissioner Pallito's involvement in the library situation." (Doc. 19 at 9.) The Court adopted my Report and Recommendation, and granted Cafferky thirty days in which to file an Amended Complaint. (Doc. 20.) Cafferky timely filed his Amended Complaint on August 30, 2010, naming additional Defendants and adding new claims. Defendants have again moved to dismiss, which motion is currently before the Court.

The Amended Complaint alleges that on June 1, 2009, Cafferky's parole was revoked and he was incarcerated at NERCF. Cafferky claims that the revocation came after he contacted his probation/parole officer, Defendant Dennis Brancaccio, for help with an alcohol problem. In a letter to the state court dated July 4, 2009, Cafferky asked the court to consider his contributions to the community, and "see this relapse for what it is rather than criminal behavior . . . ." (Doc. 21-1 at 1.)

Cafferky alleges that Brancaccio tried "to incarcerate me for a year until his efforts were disagreed with by Judge Reiss." (Doc. 21 at 3.) It is not clear from the Amended

2

Complaint what Brancaccio did in this regard, or what Judge Reiss concluded that was contrary to Brancaccio's position. Cafferky does allege that he had a "business dealing" with a friend of Brancaccio's that "went badly," and that Brancaccio therefore "tried to violate my natural freedoms and managed to do so for roughly 3 months of 2009." (*Id.*) Cafferky further claims that Brancaccio denied a request by a DOC case worker "to get me into a rehab center," and that Brancaccio's conduct violated the Eighth Amendment. (*Id.* at 3-4)

The Amended Complaint also expands on Cafferky's initial claim with respect to the legal resources at NERCF. He claims that he made "numerous attempts to access legal material[s] to prepare a defense as well as prepare this complaint," but that the resources for doing so were inadequate. (*Id.* at 5.) Specifically, Cafferky alleges that resources such as paper, pencils and access to a copier were limited, and that prison librarians and assistant librarians had inadequate legal training.

On July 14, 2009, Cafferky filed an "Inmate Request Form" complaining about his inability to access the law library. On July 16, 2009, Defendant Scott Shaffer responded that "[t]his problem will be address[ed] as it is a facility issue and was not the fault of Inmate Cafferky." (Doc. 21-2 at 1.) Cafferky now claims that various supervisors should share responsibility for the condition of the library, including Commissioner Pallito, NERCF Superintendent Celeste Girrell, and Legal Resource Representative Carol Callea.

Cafferky reports that he is no longer at NERCF, but remains on supervised release. He currently lives in Hyde Park, Vermont. For relief, he is seeking a declaration that his constitutional rights were violated; an order requiring that DOC libraries meet constitutional requirements; compensatory damages against each Defendant; and punitive damages against Defendant Brancaccio.

3

**Discussion**

## I.     Motion to Dismiss Standard

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the Amended Complaint as true and draw all reasonable inferences in Cafferky's favor.  *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The Court may also examine documents attached to the Amended Complaint as exhibits, as well as matters of which judicial notice may be taken.  *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right of relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 570)).

In this case, and despite a considerable extension of time, Cafferky has failed to oppose Defendants' motion.  Nonetheless, his failure to respond does not warrant dismissal if the Amended Complaint is sufficient to state a claim on which relief can be granted.  *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000); *see also Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983).  Because Cafferky is proceeding *pro se*, the Court must construe his

pleadings liberally.  *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006).  Specifically, the court must read the Amended Complaint with "special solicitude" and interpret it to raise "the strongest arguments [it] suggest[s]."  *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006).

## II.     Official Capacity Immunity

Defendants' first argument is that, to the extent Cafferky is seeking compensatory damages, the Eleventh Amendment bars any such recovery against state officials being sued in their official capacities.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  A state may waive its Eleventh Amendment immunity, but the waiver must be unequivocally expressed.  *Id.* at 673.  Additionally, Congress may abrogate the Eleventh Amendment, but only by an "unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'"  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

Here, there has been no waiver by the State of Vermont, and no congressional abrogation.  Indeed, the Supreme Court has held that Congress did not intend to abrogate sovereign immunity by enacting Section 1983, *see Quern*, 440 U.S. at 340-41, and the State of Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment.  *See, e.g.*, 12 V.S.A. § 5601(g).  Therefore, any federal constitutional claims for damages brought against Defendants in their official capacities should be DISMISSED.  *See Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) ("The Eleventh Amendment likewise bars [plaintiff] from pursuing a claim for damages against the individual defendants in their official capacities.").

### III. Personal Involvement

Defendants next argue that the Amended Complaint fails to allege their personal involvement in unconstitutional conduct. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Defendants begin with Cafferky's claims regarding the prison law library. As discussed above, the allegation is that basic materials such as pencils and paper were often unavailable, and that the law librarians were not sufficiently familiar with the law.

As to the individual Defendants, the Amended Complaint alleges that Commissioner Pallito and Superintendent Girrell "rarely ever set foot in the units where I was held . . . ." (Doc. 21 at 5.) Similarly, Defendant Carol Callea was "almost never present at the NERCF." (*Id.* at 6.) Therefore, giving the Amended Complaint the required liberal reading, Cafferky appears to be alleging that these supervisory Defendants had a general duty to provide inmates with adequate legal resources. He does not claim that Pallito, Girrell or Callea had specific knowledge about the alleged inadequacies of his particular facility.

"[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). Mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations

6

merely because he held a high position of authority).  Nonetheless, under certain limited circumstances, a supervisor may be held liable for unconstitutional conduct.  As set forth by the Second Circuit:

> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring."  *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Iqbal*, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

With regard to Defendants Pallito, Girrell and Callea, the Amended Complaint does not allege any of these prerequisites for supervisor liability.  Certainly there is no allegation of direct involvement.  To the contrary, Cafferky claims that these Defendants were rarely present at the facility.  Nor is there any allegation that these Defendants were notified of the alleged shortcomings in the NERCF library.  Furthermore, Cafferky does not claim that the library situation was the result of a policy or custom that sanctioned such conditions, or that the supervision of prison employees constituted gross negligence.  *See AT&T Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (gross negligence "is conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing").  Consequently, the claims being brought against these supervisory Defendants should be DISMISSED.

Cafferky also claims that he notified Security and Operations Supervisor Scott Shafer of the library conditions through a prison grievance form. Shafer's response confirmed the validity of Cafferky's claim and declared that the issue would be addressed. Accordingly, and accepting Cafferky's allegations as true, there is no indication of a constitutional violation by Defendant Shafer.

The final Defendant with respect to the library access claim is Correctional Officer Robert Bowen. The allegation against Bowen is that he staffed the law library with "whomever [he] feels like giving the job to," and not to persons with legal training. As noted by Defendants, there is no claim that Bowen interfered with Cafferky's access to the courts in any tangible way. Moreover, as more fully set forth below, the Constitution does not require access to a trained law librarian. *See Lewis v. Casey*, 518 U.S. 343, 351-54 (1996) (no "freestanding right to a law library or legal assistance"). Defendant Bowen is therefore entitled to dismissal of Cafferky's constitutional claim.

As to the actions of Defendant Brancaccio with regard to Cafferky's parole violation and access to rehabilitation, Defendants concede, at least with respect to the rehabilitation question, that Brancaccio was personally involved. (Doc. 22 at 6.) Accordingly, the claims against Brancaccio should not be dismissed on this basis. The claims against all other Defendants, however, should be DISMISSED for lack of personal involvement.

## IV. Access to Courts Claim

Defendants next argue that Cafferky has again failed to allege an access to courts claim. As I explained in my prior Report and Recommendation, the First Amendment grants prisoners "a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004). This right "requires prison

8

authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828; *Bourdon*, 386 F.3d at 92.  In order to state a cause of action, however, an inmate must show that inadequate facilities caused him prejudice.  As the Supreme Court explained in *Lewis*, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  518 U.S. at 351-54.  Instead, a plaintiff must show that the defendant took or was responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).

In his initial Complaint, Cafferky failed to allege specific interference with his access to the courts.  He now states in his Amended Complaint that he "made numerous attempts to access legal material to prepare a defense as well as prepare this complaint."  (Doc. 21 at 5.)  Preparation of a "defense" presumably refers to his criminal proceedings in state court.  Cafferky's filings in the instant case demonstrate that he submitted motions in his criminal case *pro se*, but that the state court also appointed standby counsel.  (Doc. 18-1 at 8.)  The Supreme Court has held that "the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners . . . with access to the courts."  *Bourdon*, 386 F.3d at 94.  Cafferky thus has no basis for bringing an access to courts claim with respect to his criminal case.

As to the instant complaint, Cafferky has plainly been able to file both a Complaint and an Amended Complaint, with no obvious limitation on his ability to assert his claims.

9

Indeed, he has failed to allege that a "nonfrivolous legal claim ha[s] been frustrated or was being impeded" as a result of any Defendant's conduct. *Lewis*, 518 U.S. at 353. Cafferky criticizes "the (holier than thou) attitude which has been allowed to go on to[o] long," and seeks relief so that "future persons charged with a crime may exercise their constitutional right to defend themselves." (Doc. 21 at 5.) However, this sort of general allegation does not demonstrate the sort of prejudice required for an access to courts claim, and the claim should therefore be DISMISSED. *See Lewis*, 518 U.S. at 351 (inmate "must go one step further and demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim.").

### V.     Parole Violation and Access to Rehabilitation

Defendants address only briefly the allegations against Defendant Brancaccio, stating that "there is no basis to believe that [refusal to authorize treatment at a rehabilitation center] is a constitutional violation." (Doc. 22 at 6.) Defendants' contention is correct, as courts have long held that inmates have no constitutional right to drug rehabilitation. *See, e.g., Saunders v. United States,* 2007 WL 4264579, at *2 (E.D.N.Y. Nov. 30, 2007) *(*citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)); *see also Smith v. Follette*, 445 F.2d 955, 961 (2d Cir. 1971) ("[t]he claim to a constitutional right to treatment for narcotics addiction has no basis in either the provisions of the Constitution or the decisions of the courts."). Although Cafferky's claim pertains to alcohol, rather than drug, rehabilitation, the general principle is the same, and the Court should find that Cafferky had no constitutional right to such treatment. *See Purkey v. Simmons*, 29 F. App'x 546, 547 (10th Cir. 2002) (citing *DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

Defendants have not argued for dismissal of the parole violation claim, perhaps because it is not clearly pled. As discussed above, Cafferky alleges that he was taken into custody for a parole violation shortly after contacting Broncoccio and asking for "help with an alcohol problem of which I have been in recovery for years now." (Doc. 21 at 3.) Cafferky also admitted his "relapse" in a letter to Judge Reiss. (Doc. 21-1 at 1.) Given this admission, and assuming that Cafferky was required to avoid alcohol as a condition of his probation or parole, it is unclear why the revocation was improper.

Cafferky further contends that Broncoccio advocated for imprisonment of one year, but that Judge Reiss disagreed. No further facts are provided, except that Cafferky blames Broncoccio's actions for his "three month, life threatening stay in a correctional facility . . . ." (Doc. 21 at 3.) Cafferky also claims that Broncoccio had a conflict of interest, but it is again unclear how the conflict impacted either Cafferky's parole revocation or his subsequent period of incarceration. The Court should therefore find that Cafferky has failed to allege a "plausible" constitutional claim, and that the claims brought against Broncoccio should be DISMISSED. *Twombly*, 550 U.S. at 570. As discussed below, however, I recommend that this dismissal be without prejudice.

## VI.   Requests for Injunctive Relief

Assuming, for the sake of argument, that the Amended Complaint raises a plausible constitutional claim, the Court would need to consider Cafferky's requests for injunctive relief. His requests are that "all libraries" be brought up to constitutional standards, and that Defendants be barred from holding him "under conditions" as retaliation for his instant claims. (Doc. 21 at 7.) Critical to this analysis is the fact that Cafferky is no longer housed in a DOC prison facility.

"Where a prisoner has been *released* from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot." *Pugh v. Goord*, 571 F.Supp.2d 477, 489 (S.D.N.Y. 2008) (emphasis in original); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (internal quotations omitted). Although an exception applies where the offense is "capable of repetition yet evading review," that exception does not apply since there is no reason to believe that (1) Cafferky will have his parole revoked again, (2) that he will be returned to NERCF, and (3) that he will either be frustrated by the condition of the prison law library, or retaliated against by prison officials. *See United States v. Corbin*, 620 F. Supp. 2d 400, 407 (E.D.N.Y. 2009) (citing *Reimers v. State of Oregon*, 863 F.2d 630, 632 (9th Cir. 1989) (mootness exception does not apply where conduct would recur only if appellant were to commit another crime and return to prison)); *see also Phillips v. Ienuso*, 1995 WL 239062, at *2 (S.D.N.Y. Apr. 24, 1995) (mootness exception not apply to claims brought by parolee). Cafferky's requests for injunctive relief should therefore be DENIED as moot.

**VII.    Leave to Amend**

The Second Circuit has held that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading . . . gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Here, the Court granted Cafferky leave to amend his initial Complaint. His Amended Complaint, while considerably more detailed, still fails to raise a plausible claim as discussed above.

Although the Amended Complaint includes several new Defendants, the claim with regard to library conditions at NERCF remains the same.  Cafferky has again failed to assert a constitutional violation resulting from such conditions, and offers the Court no reason to believe that further leave to amend would reveal a valid claim.  As to the claims against Defendant Brancaccio, the rehabilitation claim is clearly barred as a matter of law, and any claim with regard to a wrongful parole violation is, at best, difficult to discern.  I therefore recommend that Defendants' motion to dismiss be GRANTED without leave to amend, with the added recommendation that any claim against Brancaccio relating to Cafferky's parole violation be dismissed without prejudice, such that it may be re-filed with adequate supporting facts, assuming that such facts exist.

## Conclusion

For the reasons set forth above, I recommend that Defendants' unopposed motion to dismiss (Doc. 22) be GRANTED, and that this case be DISMISSED.  I further recommend that any claim against Defendant Brancaccio relating to Plaintiff's parole violation be DISMISSED without prejudice.

Dated at Burlington, in the District of Vermont, this 14th day of February, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).  Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).